Probate Court of Montgomery County.

STATE OF OHIO V. A. C. KNECHT.

Decided February 14, 1930.

*Jerome T. Miller,* assistant prosecuting attorney, for the state.

*Joseph D. Chamberlain,* for the defendant.

WISEMAN, J.

This matter comes on to be heard in the criminal branch of this court on an information filed by the Prosecuting Attorney of Montgomery county, Ohio, against the defendant, A. C. Knecht, in which the defendant is charged

"that on or about the 1st day of January, A. D. 1930, at the county of Montgomery aforesaid, one A. C. Knecht then and there being a legally registered pharmacist under the laws of the state of Ohio, did then and there unlawfully manage and conduct a retail drug store located at 3210 North Main street, in Harrison Township, in said county and state, not then and there being personally in full and actual charge of said retail drug store and not then and there having in his employ in full and actual charge of the pharmaceutical department of said drug store a pharmacist legally registered under the laws of the state of Ohio, contrary to Section 12705 of the General Code in such case made and provided, and against the peace and dignity of the state of Ohio."

This prosecution is based upon Section 12705 of the General Code of Ohio, which so far as it is applicable to this case reads as follows:

"whoever being a legally registered pharmacist shall manage or conduct a retail drug store without being personally in full and actual charge of such store, or unless he has in his employ in full and actual charge of the pharmaceutical department of such store a pharmacist legally registered under the laws of this state shall be fined. etc."

This same section also defines what is meant by a retail drug store. Section 12707 of the General Code provides that Section 12705 shall not apply to physicians in prescribing medicines for their patients or the sale by druggists of numerous articles in the nature of certain household necessities and at the end thereof excepts

"other similar preparations when compounded by a legally registered pharmacist and put up in bottles or boxes bearing the label of such pharmacist or a wholesale druggist, with the name of the article and directions for its use on each bottle or box."

The facts in this case may be briefly stated as follows:

A. C. Knecht is a legally registered pharmacist under the laws of the state of Ohio, and owns and operates, personally, a drug store at 2301 North Main street, in the city of Dayton, Ohio; that A. C. Knecht is the owner of the Stillwater Pharmacy which is located at 3210 North Main street, Dayton, Ohio, which is beyond the corporate limits of the city of Dayton, and located in Harrison Township, Montgomery county, Ohio; that he has in his employ at the Stillwater Pharmacy one Paul Burns, a legally registered pharmacist under the laws of the state of Ohio; that Paul Burns goes on duty at said pharmacy at six o'clock in the morning and closes the store at a late hour in the evening. In the late afternoon he leaves the store and returns again in the evening after an absence of several hours, during which time he goes home for his evening meal, a distance of several miles. The testimony shows that during his absence the prescription counter or pharmaceutical department is closed; that in case there are any calls for any pharmaceutical preparations or the filling of prescriptions the matter is held in abeyance until his return, or, the request is telephoned to A. C. Knecht, the defendant, at 2301 North Main street, which is nine blocks distant from the Stillwater Pharmacy. The testimony shows that during the absence of Paul Burns from the pharmacy a young man by the name of John Lindsey who is not a legally registered pharmacist, nor an assistant registered pharmacist, is in control of the business in the way of the operation of a soda fountain, the selling of soft drinks, candy, cigars and certain medical compounds in the nature of household necessities and patent medicines.

The testimony shows that one Ed. R. Fry, a state inspector, employed by the Board of Pharmacy of the state of Ohio, called at 3210 North Main street at the Stillwater Pharmacy on December 31, 1929, and purchased a small article from Paul Burns, the legally registered pharmacist, who was on duty at that time. On January 1st, during the evening hours, Mr. Fry called at the Stillwater Pharmacy again and found that Paul Burns, the legally regis-

tered pharmacist, was absent. This call was made during the hour when Paul Burns usually absented himself from the pharmacy to go home for his evening meal. It will also be observed that this was a holiday, being New Year's day. Mr. Fry, upon entering the store, was met by the young man, Lindsey, to whom he stated that he, Mr. Fry, desired to purchase a small bottle of iodine. Thereupon the sale was consummated. This bottle of iodine has been introduced into the evidence and marked "State's Exhibit A." On this bottle is a label which gives the name of the contents, the instructions for its use, the antidote, and the name of the pharmacy. The testimony in this case shows that the defendant, A. C. Knecht, compounded personally, this iodine, bottled it and labeled it and placed such compound upon the shelf in the Stillwater Pharmacy, ready for sale.

The question now before the court is whether or not the absence of Paul Burns from the Stillwater Pharmacy at the time the purchase of the iodine was made by the inspector renders the defendant, A. C. Knecht, liable to this prosecution under Section 12705 of the General Code of Ohio.

The court has been unable to find any judicial determination of this question in the state of Ohio. The court approaches this question as being a case without precedent.

There is no question but that the Legislature of the state of Ohio was acting within the police powers of the state when it passed Sections 12705 and 12707 of the General Code of Ohio. The state has a right to legislate in the interest of the public health and general welfare of the people of the state and in so doing has the right to restrict, limit or regulate, in a reasonable manner, the conduct of legitimate business.

The power of the state to pass regulatory measures in the interest of public welfare does not give the state the right to pass laws to destroy legitimate business. The courts in interpreting such regulatory measures and applying the statutory provisions to the facts such as are found in the instant case should, if possible, construe such legislative acts in a way which will prevent injustice. The

power of the state to regulate the conduct of a business does not include the power to destroy said business or to work a manifest injustice to one who conducts said business.

A distinction should be made between those penal laws which are *malum in se* in their nature, and those which are simply *malum prohibitum.*

Without question the offense with which the defendant is charged is not immoral or illegal from the nature of the transaction upon any principles of natural, moral or public law, but is made a penal offense simply by restrictive and regulatory legislation. It occurs to this court that a more liberal construction in favor of the defendant should be given in the interpretation of a restrictive or regulatory law than in the interpretation of penal laws which are *"malum in se."*

It has long been a well settled general rule, however, that penal statutes are subject to the rule of strict construction in favor of the accused. 25 Ruling Case Law, 1081.

The rule of strict construction of the penal law is subordinate to the rule of reasonable, sensible construction having in view the effectuation of the legislative purpose, and is not to be so unreasonably applied as to defeat the true intent and meaning of the enactment. 25 Ruling Case Law, 1084.

A more liberal interpretation of the law is applied with respect to exemptions or provisos in connection with a penal statute. A good authority in the state of Ohio is *State, ex rel. Oil Company,* v. *Dauben,* 99 Ohio State, page 406. The court on page 411 say:

"Statutes or ordinances of a penal nature, or which restrain the exercise of any trade or occupation or the conduct of any lawful business, or which impose restrictions upon the use, management, control or alienation of private property, will be strictly construed and their scope cannot be extended to include limitations not therein clearly prescribed; exemptions from such restrictive provisions are for like reasons liberally construed. 36 Cyc., 1180, and cases cited and 2 Sutherland on Statutory Construction, (2 ed.), Section 356."

The reference to 2 Sutherland, Section 356, reads as follows:

"In penal acts provisos or exemptions in favor of the accused are liberally construed on the same consideration that penal laws are strictly construed."

The reference to 36 Cyc., 1187, reads as follows:

"A proviso in a penal statute which is favorable to the defendant is to be liberally interpreted in his behalf."

The court has before it a penal section in 12705 and a proviso or exemption section in 12707. In following the decisions of the courts on the subject the court should construe the provisions of Section 12705 strictly in favor of the accused and the exemptions mentioned in 12707 liberally in favor of the accused.

A question is presented to the court as to whether or not the iodine preparation which was sold by Mr. Lindsey in the defendant's Stillwater Pharmacy was such a preparation as falls within the exemption mentioned in 12707 of the General Code. More particularly the question is whether or not the iodine is excepted as being one of various "other similar preparations when compounded by a legally registered pharmacist, etc."

The court has found that such provisions are liberally construed in favor of the defendant. When the court takes into consideration the nature of this legislative provision which regulates the conduct of a business such as a drug store; that it is in the nature of regulatory and prohibitory legislation which restricts, limits and controls the methods of conducting a legitimate business; and, also, the numerous drugs or preparations which are excepted from the operation of Section 12705, the court believes that iodine which was prepared and labeled as prescribed by law falls within the blanket provision as being one of various "similar preparations" excepted by the statute. The court notes that there is enumerated in this exemption statute numerous poisonous drugs which are no less poisonous or dangerous than iodine, such as blue vitriol, copperas, etc. It occurs to this court that this preparation of iodine is regarded as a household necessity and

is found in almost every household. The manner of the use of iodine is generally known, even more so than some of the other preparations mentioned in this section.

The holding on the part of the court that the sale of iodine falls within the excepted articles by virtue of the provisions of Section 12707 does not necessarily dispose of the charge made against the defendant. The purchase of the iodine was made in order that the state may have some evidence to support its charge against the defendant. The question is still left open for the court to decide whether or not the defendant was conducting "a retail drug store without having in full and actual charge of the pharmaceutical department of such store a pharmacist legally registered under the laws of this state."

The testimony in this case shows that the defendant employed Mr. Burns as a registered pharmacist and gave him full charge of the pharmaceutical department of the Stillwater Pharmacy.

The question for the court to determine is whether or not the absence of Mr. Burns from the store during the evening dinner hour renders the defendant liable to prosecution under Section 12705 of the General Code. As heretofore stated the courts are hesitant to place a construction upon a penal statute which will in effect destroy a legitimate business or work a manifest injustice. This section must be construed in the light of modern business dealings and also the ways of modern living. To place the interpretation on this section which is claimed by the state, to-wit: that the defendant is obligated to have present in the Stillwater Pharmacy every moment from the time the store is opened until it is closed a legally registered pharmacist, would be to construe this section strictly against the accused. The courts have held that a penal statute should be construed strictly in favor of the accused, and the statute should not be expanded to embrace acts which are not reasonably within its terms. The testimony in this case shows that the store had upon it the sign "Stillwater Pharmacy," and was otherwise advertised as a retail drug store. During the absence of Mr. Burns from the place the store was open for business for the sale of

soft drinks, cigars, candy, patent medicines, etc. The state contends that even though the defendant did employ a registered pharmacist and placed him in full and actual charge of the pharmaceutical department and he should step out of the pharmacy on some act within the line of his employment, or to perform some act of mercy, or by reason of some emergency, such absence would render the defendant guilty of violating this section. The state further contends that the fact that this store was advertised as a retail drug store and was open for business for the sale of other articles during the absence of Mr. Burns, the defendant would be liable to prosecution under this section for operating a retail drug store without having a legally registered pharmacist in full and actual charge of the pharmaceutical department. The court does not believe that the State Legislature of Ohio ever intended that this section should be so strictly construed. It will be observed that the law only requires the defendant to have a legally registered pharmacist "in full and actual charge of the pharmaceutical department of such store." The testimony in this case shows that at the time Mr. Burns left the store the pharmaceutical department or prescription counter was closed. If the court should place the strict construction on this section as is claimed by the state it would have been necessary for Mr. Knecht to have closed his place of business whenever Mr. Burns stepped out of the store. Such a construction of this statute would work a manifest injustice on Mr. Knecht or any other business man engaged in like business. If the statute were to be construed in this manner it would in effect destroy the business which the legislature sought to regulate.

In 25 Ruling Case Law, page 1022, the court finds the following quotation:

"It is a universal rule in the exposition of statutes that the intent of the law, if it can be clearly ascertained, shall prevail over the letter and this is especially true where the precise words if construed in their ordinary sense, would lead to manifest injustice."

The courts of our land should be more and more con-

cerned with the spirit of the law than with the letter of the law. The court is led to inquire into the question of the intention of the Legislature in passing the statute as it exists at the present time. This intention is apparent when an investigation is made into the several expressions by the legislature on this subject. In 1908 the State Legislature passed an act which is found in 99 Ohio Laws, page 507, paragraph 77, which in substance provided that no person not a legally registered pharmacist shall open or conduct a pharmacy or retail drug store either as proprietor or manager thereof unless he has in his employ and in charge of such store a legally registered pharmacist. It will be observed that this law as passed did not prohibit a legally registered pharmacist from conducting or managing a retail drug store even though he were not present in the store and had no legally registered pharmacist employed in such store. In order to correct this apparent defect in the law the State Legislature passed a new act which is found in 102 Ohio Laws, page 117, which except for the minor change in the penalty prescribed is the present Section 12705 of the General Code of Ohio. In this amendment the State Legislature provided that no "legally registered pharmacist shall manage or conduct a retail drug store without either being personally in full and actual charge of such store, or unless he has in his employ in full and actual charge of the pharmaceutical department of such store a pharmacist legally registered under the laws of this state."

The court gathers from these several enactments that it was the legislative intent to provide against the apparent evil of a legally registered pharmacist opening up a number of drug stores wherein he was not personally present and had no legally registered pharmacist in charge of said stores. The court also gathers from these expressions of the State Legislature that the last enactment was intended to provide against this evil and that all that the state legislature intended was that a legally registered pharmacist should be in charge of the pharmaceutical department of each and every drug store which was open for business.

The court is of the opinion that the testimony in this case shows that this law has been complied with and that the mere absence of the registered pharmacist for a certain period of the day does not render the defendant, A. C. Knecht, liable to prosecution under this section.

The court accordingly finds the defendant not guilty.